FILED

2008 Jan-07  AM 09:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

08 JAN -4  PM 12: 37

DISTRICT COURT
N. D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JIM WALTER RESOURCES, INC.;** | ) | |
| **TONY KEY, and TRENT** | ) | |
| **THRASHER, individuals,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | CV-08-P-0027-S |
| | ) | |
| **SECRETARY OF LABOR;** | ) | |
| **MINE SAFETY AND HEALTH** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1.     This action challenges the failure of Defendant Mine Safety and Health

Administration ("MSHA") to retract, revise, or otherwise correct an erroneous and misleading

official accident report ("Report" or "MSHA Report") it issued following its investigation into a

September 23, 2001 accident ("Accident") at Jim Walter Resources No. 5 Mine in Brookwood,

Alabama.

2.     Plaintiffs Jim Walter Resources, Inc. ("JWR"), Tony Key ("Key"), and Trent

Thrasher ("Thrasher") seek an order declaring that MSHA has violated the Administrative

Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), by initially publishing in that Report erroneous

information about Plaintiffs, by continuing to publish the Report without modification after the

Report's findings and conclusions were disproven in official adjudicatory proceedings before the

Federal Mine Safety and Health Review Commission ("Commission"), and by refusing to make

such modifications.  Plaintiffs also seek an order directing MSHA to strike from the Report all

1

conclusions assigning responsibility for the Accident to Plaintiffs, and to issue an official retraction of the Report to prevent the continued use of the Report as an authoritative document.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question), § 2201 (declaratory judgment), § 2202 (injunctive relief), and the APA, 5 U.S.C. §§ 701-706. An actual controversy exists between the parties hereto within the jurisdiction of this Court. The controversy involves a federal question and arises under an act of Congress regulating interstate commerce. Defendants have acted or failed to act in an official capacity and under legal authority within the meaning of 5 U.S.C. § 702.

4.    Venue is proper in this district under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because Defendant MSHA maintains an office in this judicial district, and Plaintiffs JWR, Key and Thrasher reside in this judicial district.

## PARTIES

5.    Plaintiff JWR is the operator of No. 5 Mine, in Brookwood, Alabama.

6.    Plaintiff Tony Key is an employee of JWR. On the evening shift of September 23, 2001, Key was an outby foreman working underground in the No. 5 Mine.

7.    Plaintiff Trent Thrasher is an employee of JWR. On the evening of September 23, 2001, Thrasher was Assistant Mine Manager at the No. 5 Mine.

8.    The Defendant Secretary of Labor heads the U.S. Department of Labor, an agency of the United States, as defined in 5 U.S.C. § 701(b)(1), and subject to the APA, and is charged with the administration and enforcement of the Federal Mine Safety and Health Act ("Mine Act"), 30 U.S.C. §§ 801, et seq.

9.    Defendant Mine Safety and Health Administration is an agency of the United

2

States, as defined in 5 U.S.C. § 701(b)(1), and subject to the APA, and was created as the agency through which the Secretary of labor is charged with the administration and enforcement of the Mine Act. 30 U.S.C. § 302(a).

10. The Mine Act provides, *inter alia*, that the Secretary of Labor "shall make frequent . . . investigations" in coal mines for the purpose of "obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of disease and physical impairments originating in such mines." 30 U.S.C. § 813(a).

## STATEMENT OF FACTS

11. On September 23, 2001, two explosions occurred at Jim Walter Resources, Inc.'s, No. 5 Mine, resulting in the deaths of thirteen miners, and injury to three others, including plaintiff Key.

12. Plaintiff Key had been working to support the roof in on the 4 Section of the No. 5 Mine ("4 Section"), assisted by JWR miners Junior Adams ("Adams") and Michael McIe ("McIe"). Despite their efforts, a portion of the mine roof fell, some sixty (60) feet from their location, releasing methane gas and triggering an explosion that injured all three men. Junior Adams, who weighed almost 300 pounds, hurt his back and was not able to move. Key suffered head and back wounds and McIe was burned and injured his ribs and back. Key and McIe were unable to move Adams themselves and Key told Adams that he would send him help to get him out.

13. While evacuating the mine with McIe, Key directed rescuers back to help Adams escape from 4 Section. Tragically, a short time after the first explosion, and as 12 rescuers worked to move Adams to safety, a second explosion occurred, killing Adams and the rescuers.

14. Defendant MSHA, pursuant to its authority under § 103(a) of the Mine Act, 30

3

U.S.C. § 813(a), initiated an investigation into the cause(s) of the explosions at No. 5 Mine.

15.     After an extensive investigation, MSHA published its official Report on December 11, 2002. Included within the Report were determinations of fact and legal conclusions assigning blame for the accident, deaths and injuries on Plaintiffs JWR, Key and Thrasher.

16.     The MSHA Report presented MSHA's conclusion that the second explosion was ignited by a block light slave unit on 4 Section. The MSHA investigative team concluded that Charles Nail ("Nail"), a JWR underground electrician, failed to remove power from the block light system between the two explosions. Nail was one of the miners who perished while attempting to rescue Junior Adams.

17.     The MSHA investigative team ignored evidence that Nail had removed the power from the block light system by depressing an emergency stop button. Instead, the team concluded that the emergency stop button had been depressed by explosion forces. That conclusion was incorporated into the MSHA Report.

18.     The MSHA investigative team ignored and/or misapplied evidence analyzed by MSHA's Technical Support ("Tech Support") that indicated that the block light system was not the source of ignition for the second explosion.

19.     The MSHA investigative team did not include in the MSHA Report the Administrative Summaries of Tech Support's analysis of physical evidence. Historically, these summaries have been included in investigation reports, and their inclusion is directed by MSHA's official handbook on accident investigations.

20.     MSHA's exclusion of the Administrative Summaries was a deliberate attempt to mislead the public into believing that there was scientific support for MSHA's conclusions.

4

21.    Clete Stephan ("Stephan"), the MSHA investigative team member responsible for evaluating the cause and effects of the explosive blast forces, presented a theory that a "transition zone" of methane gas existed near the end of the track in 4 Section, and caused the second explosion.  The MSHA investigation team ignored any evidence that did not support Stephan's "transition zone" theory.

22.    MSHA investigation team members John Urosek and Dennis Beiter manipulated ventilation simulation data in order to inaccurately place an explosive concentration of methane within Stephan's "transition zone."

23.    MSHA investigation team members arbitrarily ignored evidence of methane layering in 4 Section and did not present such evidence in the MSHA Report.

24.    As a result of these deliberate omissions, the MSHA Report presents a distorted, inaccurate and impossible theory of the origin of the second explosion.  In doing so, MSHA wrongly attributed responsibility for the second explosion to the victims themselves, rather than presenting the true, prudent, and heroic actions taken by JWR miners on September 23, 2001.

25.    The MSHA Report concludes that the second explosion was fueled by methane and coal dust.  In reaching this erroneous conclusion, and assigning blame for the second explosion on JWR and its miners, MSHA arbitrarily ignored evidence that JWR and its miners had engaged in a thorough and systematic practice of rock dusting 4 Section, in order to suppress the explosibility of the coal dust.

26.    Using post-explosion sampling and measurements, MSHA erroneously concluded that JWR had failed to apply adequate rock dust to the mine before the explosions, and thereby contributed to the causation of the accident.

27.    The MSHA investigative team arbitrarily ignored testimony and other evidence

5

that 4 Section had been rock dusted in the days immediately before the accident.

28.    The MSHA investigative team arbitrarily ignored testimony and evidence presented by JWR and its miners that conditions underground were radically changed by the explosion, the subsequent flooding of the mine, and through the passage of time.

29.    Rather than crediting the testimony of miners familiar with the mine, and who had first-hand knowledge of and performed the work to keep it safe, the MSHA Report presents the results of MSHA's post-accident mine dust survey as support for its flawed theory that JWR and its miners failed to maintain the proper amount of rock dust to inert coal dust, and prevent a coal dust explosion.

30.    The MSHA investigative team arbitrarily dismissed sloughage as a contaminant for the mine dust survey samples, without performing any testing to determine the effects of sloughage.

31.    The MSHA investigative team arbitrarily dismissed the effects of the flooding of the mine on the mine dust survey, without performing any tests to determine its effects. MSHA also failed to account for nearly 30,000 tons of material loaded out of the mine during recovery efforts, that was among the debris from the mine roof, ribs and floor, and relocated by the explosions and flooding.

32.    The MSHA investigative team arbitrarily dismissed the fact that rock dust had been blown out of the mine by the forces of the second explosion, despite the fact that Stephan actually took samples of the rock dust that had been blown over two thousand feet, up through air shafts, and outside the mine. Instead, the MSHA Report arbitrarily and erroneously concludes that "oscillating pressures" somehow restored the mine dust to "ambient" conditions.

33.    JWR had advised against the use of the post-explosion mine dust samples, and

6

was prejudiced by MSHA's reliance on them in this investigation. Moreover, the MSHA Report failed to address any of the concerns raised by JWR, and arbitrarily dismissed testimony and evidence presented by JWR and its miners that question the use of the post-accident mine dust samples.

34.     JWR believed that its actions to evacuate "all miners," including Junior Adams, were consistent with JWR's approved evacuation plan and the law. The MSHA Report's characterizations of the evacuation and rescue attempt defames the efforts of Key and the twelve heroic miners who gave their lives trying to rescue their fallen friend and co-worker.

35.     The MSHA Report falsely accuses JWR of failing to initiate a "mine wide page" in order to effect the evacuation of the mine, after the first explosion. JWR provided evidence to the MSHA investigative team that demonstrated that a "mine wide page" was not called for by JWR's evacuation plan, and would have increased, rather than reduced, confusion. Moreover, a "mine wide page" was simply not possible, after the first explosion, because of damage from the first explosion. The MSHA Report nevertheless arbitrarily suggests that the failure to conduct such a page was improper and contributed to the severity of the accident.

36.     The MSHA Report wrongly states that Plaintiff Key improperly failed to effectively communicate the danger of a second explosion to other miners. In fact, Key was injured in the first explosion, and all of his actions were directed to effecting the rescue of Junior Adams and the safe evacuation of all miners in accordance with JWR's approved evacuation plan.

37.     The MSHA Report erroneously states that JWR failed to perform any fire and emergency drills from March 2001 until the date of the accident on September 23, 2001. It further claims that the failure of JWR and mine management to do so contributed to the JWR

7

miners being unprepared for the circumstances of September 23, 2001, and a cause of their
deaths.

38.    JWR had, in fact, conducted fire and emergency drills throughout this period
continuing right up to the days before the accident. JWR was properly providing drills to all
miners during the on-going 90-day inspection period that ran through September 30, 2001. Prior
to the release of the MSHA Report, the MSHA investigative team possessed records that
established that the allegation regarding fire and emergency drills presented in the MSHA Report
was false, yet MSHA arbitrarily ignored those records.

39.    The MSHA Report presented the narrative of the eight charges of violation of
mandatory safety standards that MSHA characterized as contributing to the accident and deaths
of September 23, 2001. JWR timely contested these alleged violations and the $435,000 in
associated civil penalty assessments pursuant to its rights under the Mine Act. Its contests were
docketed at the Commission as Docket number SE 2003-160 ("Docket 160") and assigned to
Administrative Law Judge David Barbour.

40.    Trial in Docket 160 began on November 2, 2004, and continued through January
13, 2005. In all, sixty five (65) miner, management and expert witnesses testified, and over 396
exhibits were admitted into the record.

41.    On November 1, 2005, Judge Barbour entered his written decision in Docket 160
("ALJ Decision"). Judge Barbour vacated six of the eight violations and modified the other two.
He assessed a $3,000 penalty for the modified violations. 27 FMSHRC 757.

42.    Pursuant to the Mine Act, the parties in Docket 160 each petitioned the
Commission for review of Judge Barbour's decision in Docket 160, on separate grounds. The
Secretary of Labor sought review of the two modified violations and of Judge Barbour's vacation

8

of the 30 C.F.R. § 75.1101-23(a) violation. JWR also sought review of the two modified violations.

43. The Secretary of Labor did not seek review of Judge Barbour's vacation of five of the eight allegedly contributory violations that dealt directly with roof support and rock dust conditions as the causes of the two explosions at JWR No. 5 Mine on September 23, 2001.

44. The Federal Mine Safety and Health Review Commission granted the petitions for review. The parties submitted briefs, and a public meeting was held, on June 8, 2006.

45. On August 30, 2006, the Federal Mine Safety and Health Review Commission issued its decision in Docket 160 affirming Judge Barbour's order, and remanding his penalty assessment for further explanation. 28 FMSHRC 759.

46. On December 19, 2006, Judge Barbour issued his final ruling in Docket 160, affirming his earlier findings of fact and conclusions of law, and revising his penalty assessment to $5,500. 28 FMSHRC 1068.

47. JWR timely paid the penalty assessed by Judge Barbour for the two modified orders, which were then final orders of the Commission.

48. At the completion of Docket 160, the Secretary of Labor elected not to seek judicial review of any issue by the United States Court of Appeals. Similarly, JWR did not seek judicial review.

49. The MSHA Report is a narrative presentation of the same matters litigated at length in Docket 160.

50. Despite the analysis of the evidence and consequent factual and legal conclusions of the Commission, Defendants continue to publish the MSHA Report without any correction or change from its original published contents of December 11, 2002. The Report remains publicly

9

available on MSHA's web site, http://www.msha.gov/fatals/2001/jwr5/ftl01c2032.pdf, and as

recently as December 11, 2006, the MSHA Report was cited by the West Virginia Department of

Coal Mine Safety and Health in its official report on the causes of the Sago Mine disaster.

51.     Upon completion of Docket 160, JWR orally requested that MSHA either retract

the Report or revise it to eliminate the inaccurate and discredited allegations and conclusions

regarding the causes of the accident and JWR's response to the accident.

52.     Despite the analysis and determination of Docket 160, Defendants refused, and

continue to refuse, to retract or revise the now-discredited Report and continues to publish the

Report without any correction or change from its original published contents of December 11,

2003.

53.     The MSHA Report continues to present JWR, Tony Key, and JWR management,

including Trent Thrasher, as responsible for the deaths of its miners, as demonstrated by

newspaper articles and by Congressional testimony.

54.     MSHA's continued publication of the MSHA Report, unmodified, is an attempt to

sanction JWR for the accident, and defame Tony Key and Trent Thrasher, despite the fact that

the underlying conclusions of the MSHA Report have been proven wrong.

## COUNT 1

### DEFENDANTS' INITIAL PUBLICATION OF THE REPORT WAS ARBITRARY, CAPRICIOUS, AND NOT IN ACCORDANCE WITH LAW

55.     Plaintiffs re-allege and incorporate by reference paragraphs 1-54 with the same

force and effect as if fully set out in specific detail herein below.

56.     The initial publication of the MSHA Report was required by statute, pursuant to

Mine Act § 103, and was not an exercise of agency discretion.

57.     The initial publication of the MSHA Report marked the consummation of

10

MSHA's decision making process in fulfilling its obligation under the Mine Act to investigate the September 23, 2001 accident at JWR's No. 5 Mine.

58.     The initial publication of the MSHA Report constituted final agency action on the part of the Defendants.

59.     The initial publication of the MSHA Report by Defendants was an action by which rights or obligations were determined, and from which legal consequences flowed.

60.     Under the APA, a reviewing court shall "hold unlawful and set aside" agency "action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

61.     The initial publication by Defendants of the MSHA Report presented agency conclusions that are arbitrary and capricious and not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A), and contrary to § 103(a) of the Mine Act.

62.     The initial publication of the MSHA Report by Defendants presented agency conclusions that are false and misleading. JWR, Key and Thrasher suffered and continue to suffer damage to their well-being and reputation as a result of the initial publication of the MSHA Report by Defendants.

## COUNT 2

### DEFENDANTS' CONTINUED USE OF THE REPORT AFTER THE REPORT'S FINDINGS AND CONCLUSIONS WERE DISPROVEN IN OFFICIAL ADJUDICATORY PROCEEDINGS UNDER THE MINE ACT IS UNLAWFUL

63.     Plaintiffs reallege and incorporate by reference paragraphs 1-62 with the same force and effect as if fully set out in specific detail herein below.

64.     The continued publication of the MSHA Report by Defendants, unmodified, unrevised, and unretracted, constitutes final agency action on the part of Defendants and causes further injury to JWR, Key, and Thrasher beyond the injury caused by the initial publication of

the Report.

65.     After the decision of the Commission rejected key findings and conclusions in the

MSHA Report, Defendants' continued publication of the MSHA Report without modification is

arbitrary, capricious, and not in accordance with law, in violation of the APA, 5 U.S.C.

§ 706(2)(A), and contrary to § 103(a) of the Mine Act.

66.     Defendants' continued publication of the MSHA Report presents agency

conclusions that are false and misleading.  Plaintiffs continue to suffer damage to their well-

being and reputation as a result of the continued publication of the MSHA Report.

## COUNT 3

## DEFENDANTS' ONGOING REFUSAL TO MODIFY THE REPORT AFTER THE REPORT'S FINDINGS AND CONCLUSIONS WERE DISPROVEN IN OFFICIAL ADJUDICATORY PROCEEDINGS UNDER THE MINE ACT IS UNLAWFUL

67.     Plaintiffs reallege and incorporate by reference paragraphs 1-66 with the same

force and effect as if fully set out in specific detail herein below.

68.     Under the APA, "agency action" includes a "failure to act."  5 U.S.C. § 551(13).

69.     Under the APA, a reviewing court shall "compel agency action unreasonably

withheld or unreasonably delayed."  5 U.S.C. § 706(1).

70.     Defendants' refusal to modify the report after the report's findings and

conclusions were disproven in official adjudicatory proceedings under § 113 of the Mine Act, 30

U.S.C. § 823,  constitutes action unlawfully withheld or unreasonably delayed, in violation of the

APA.

71.     Defendants' refusal to modify the discredited findings and conclusions in the

MSHA Report causes damage to Plaintiffs' well-being and reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jim Walter Resources, Inc., Tony Key, and Trent Thrasher

12

request that the Court enter judgment against the Defendants, as follows:

1.      Declare that the contents of the initial publication of the MSHA Report by
Defendants were arbitrary and capricious and contrary to law, in violation of the APA and the
Mine Act;

2.      Declare that Defendants' continued publication of the MSHA Report without
modification or revision of its contents is unlawful and in violation of the APA and the Mine
Act;

3.      Declare that Defendants' refusal to modify the MSHA Report constitutes action
unlawfully withheld or unreasonably delayed, in violation of the APA;

4.      Order that Defendants strike from the MSHA Report all legal conclusions
assigning responsibility for the accident to JWR, Tony Key, and Trent Thrasher;

5.      Order that Defendants publish an official statement retracting the MSHA Report
to prevent its continued use as an authority;

6.      Grant such other relief as may be just and proper.

                                                    Respectfully submitted,

                                                    David M. Smith, Esq.
                                                    Kevin W. Patton, Esq.
                                                    John B. Holmes, III, Esq.

                                                    OF COUNSEL:

                                                    MAYNARD, COOPER & GALE, P.C.
                                                    1901 Sixth Avenue North
                                                    2400 Regions/Harbert Plaza
                                                    Birmingham, Alabama 35203
                                                    Telephone:  (205) 254-1000
                                                    Facsimile:   (205) 254-1999

## CERTIFICATE OF SERVICE

Federal Defendants will be served the foregoing Complaint by Plaintiffs' counsel.

U.S. Attorney, Alice H. Martin
1801 Fourth Avenue North
Birmingham, AL 35203

Secretary of Labor
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, N.W.
Washington, DC 20210

Mine Safety and Health Administration
1100 Wilson Boulevard
Arlington, VA 22209-3939

U.S. Attorney General Michael B. Mukasey
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

OF COUNSEL

14

01550823.1